Adams, Douglass and Voorhees, (Adams not sitting) JJ.

BALTIMORE & OHIO RY. CO. v. SIMON STOLTZ.

1. OPINION OF NON EXPERT WITNESS COMPETENT AS TO SPEED OF A TRAIN.

A non-professional witness who has observed a moving train may give in evidence his opinion of its rate of speed although he may have no practical knowledge as to the running or management of trains. The opinion involves, time, space and motion only.

2. Opinions of Non Experts Based on Matters of Common Observation.

In cases where it is not practicable, (because the fact to be established must be derived from a series of instances passing under the observation of the witness), to place before the jury all the primary facts upon which matters lying within the common observation of men are founded, non-experts may state their opinions from such observed facts, when such opinions involve conclusions material and pertinent to the issues.

3. Contributory Negligence Generally a Mixed Question of Law and Fact.

In an action for damages for alleged negligence, the question of negligence on the part of the defendant or of contributory negligence on the part of the plaintiff, is generally a mixed question of law and fact, to be decided by the jury, under proper instructions from the court.

4. A Question of Law when no Rational Inference but Negligence.

But if all the material facts, touching the alleged negligence, be undisputed or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of negligence becomes a matter of law merely, and the court should so charge the jury.

5. When Motion for Judgment on Special Findings Should be Refused·

Touching the question of contributory negligence, in order that the special findings of a jury should control the general verdict to the contrary, such findings should be conclusive and admit of no rational inference but that of negligence, thus making it a question of law merely,

Douglass, J.

This is an action brought by the defendant in error, as administrator of Frances M. Stoltz, v. The Baltimore & Ohio Railroad Company, to recover damages resulting from the death of said Frances M. Stoltz, who was killed in attempting to pass over the Sixth street crossing in the city of Newark, on the twenty-sixth day of October, 1894.

The particular negligence averred against The Baltimore & Ohio Railroad Company is: That said defendant caused one of its passenger trains, No, 104, to be carelessly and negligently run towards and over said Sixth street crossing at a high and dangerous rate of speed (in violation of the city ordinance then in force limiting the speed to five miles per hour); that the said train was run at the rate of over thirty miles per hour, and that the defendant negligently omitted to sound or ring the bell, or give any other signal for said crossing on its approach thereto. That when within thirty feet of said crossing. the danger signal was negligently given, and caused the horse then driven by Frances M. Stoltz to become frightened, when, but for this, she could have crossed in safety.

That the train was in charge of an incompetent engineer. That the brakes were defective. That, by reason of the aforesaid acts and defaults of the company, or some of them, the said Frances M. Stoltz, and the buggy in which she was riding (without any fault on her part) were struck by the said locomotive and thrown a distance of sixty feet, and she was killed. And this administrator claims damages in the sum of $1999.

The answer denies these allegations of negligence, and says that the decedent, Frances M. Stoltz, was guilty of contributory negligence.

The cause, on these issues, was tried to a jury, and resulted in a verdict for the plaintiff in the sum of six hundred dollars.

Error is prosecuted here to reverse the judgment on this verdict.

The errors relied upon and argued are:

1. Error in the admission of improper evidence.
2. Error in the exclusion of evidence.
3. Error in the refusal of the court to direct a verdict.
4. Error in refusing to charge as requested.

5. That the court erred in the charge.

6. Error in overruling the motion of plaintiff in error for judgment upon special findings of the jury to the interrogatories as answered, notwithstanding the general verdict.

7. That the verdict and judgment are against the evidence and the law of the case.

First : As to the admission and exclusion of evidence :

During the course of the trial, various persons who saw this train as it was approaching the point of collision, were permitted to give their opinion as to the rate of speed at which the train was moving. Some of these persons had no special knowledge or experience in the running or management of railway trains. They were the average, ordinary persons with some familiarity as to moving trains. The claim is that these opinions are inadmissible, on the ground that such witnesses are not qualified to express an opinion on this subject.

We think that the case of R. R. v. Schultz, 43 O. S., 270, at 282, and the Shelby Clagget case in the 46 O. S. answer this against the claim of the plaintiff in error. The substance of what the court say is this : Where it is not practicable to place before the jury all the primary facts upon which matters lying within common observation and experience of men are founded, non-experts may state their opinion from such facts, when such opinions involve conclusions material and pertinent to the issues.

This was a matter directly in issue, viz : the speed of this train. It was simply a question of time, space and motion. That is all that was involved in this non-expert opinion. If it be relevant and proper to say how fast a man or a horse, or any moving object, is going, the same principle is here involved as we think, and none other. A want of observation and experience (which can easily be discovered upon cross-examination), goes to the weight, but not to the competency of the evidence.

We find no error either in the admission or exclusion of the evidence on this, and, I will say, on any other particular or ground in this record that it is prejudicial. We have read every word of the record, and carefully examined it, and that is our view on this proposition as to the admission and exclusion of evidence.

This brings us to the third alleged error, viz : The refusal of the court to direct a verdict for the defendant. Applying the well known rule that if there is *any* evidence, however slight, tending to show each of the material allegations that it is necessary for the plaintiff to prove in order to recover, then it is error for the trial judge to direct a verdict. We have this matter to consider in the light of that rule.

32 O. S., 66, 2d and 3d syllabus, " In an action for damages for alleged negligence, the question of negligence on the part of the defendant, or of contributory negligence on the part of of the plaintiff, is generally a mixed question of law and fact, to be decided by the jury, under proper instructions from the court.

" But if all the material facts, touching the alleged negligence, be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of negligence becomes a matter of law merely, and the court should so charge the jury."

The 24 O. S., 631, and numerous other authorities, a solid rank of them, are a unit upon this proposition, and lay this down as the rule that shall govern the court when this motion is interposed.

Railroad Co. v. Stoltz.

Unless the proof in this case, when the plaintiff rested, was such that no rational inference could be drawn from the proof except negligence on the part of the deceased, directly contributing to her injury, then the court was right in overruling the motion. Tested by this rule, we are of the opinion that this motion was properly overruled.

The fourth and fifth grounds of complaint are : Error in refusal to charge as requested, and in the charge as given. These we will consider together.

First, however, I will re er to an objection that does not appear in the charge affirmatively; neither is there a request to charge. It is said that the court erred in its failure to charge that if the evidence of the plaintiff raised the presumption of contributory negligence, that the burden was on the plaintiff to remove this presumption by evidence. There was no request to so charge. If the same had been requested, it doubtless would have been given. It is the law in a proper case. But, unless it can be seen from the whole charge that this omission prejudiced the defendant, in the absence of a request to so charge, the case would not be reversed on that ground.

We have carefully read and examined these requests and the whole charge. The requests to charge, with some verbal changes, are given, in our judgment; and there is no prejudicial error in this regard. We see no error in the charge as given.

I will not take up the time to read as much from this charge as I had intended, but I will make some reference to it. The court says: "It is the law that, notwithstanding the company may have been guilty of negligence, yet if Miss Stoltz was also guilty of negligence which contributed to cause the accident and her death, the plaintiff cannot recover. It the carlessness or negligence of Miss Stoltz, together with the carelessness or negligence of the defendant, operated proximately to produce the injury, plaintiff cannot recover. The test of negligence on her part is the same as upon the part of the plaintiff. It is the want of ordinary care, and ordinary care is such care as persons of ordinary care and prudence are accustomed to exercise under circumstances similar to those which surrounded her in the approach to that crossing. If persons of such ordinary care and prudence would have acted as she did in approaching the crossing, then she was not guilty of contributory negligence.

"The burden of proof is upon the defendant to show by a preponderance of the evidence that she was so negligent."

"It is the duty of a person approaching a railroad crossing to make use of his senses of sight and hearing to ascertain if a train is approaching the crossing; and if Miss Stoltz failed to see or hear the approaching train, when a person of ordinary care and prudence, by exercising his eyes and ears, would, under the circumstances surrounding her, as shown by the evidence, have discovered a train in close proximity, and was injured, she would be guilty of such negligence as will prevent a recovery by the plaintiff.

"Ordinary care and prudence requires that a person, before attempting to cross a known railroad crossing, should use his eyes and ears for the purpose of discovering and avoiding danger from a passing train ; and the omission to do so, without reasonable excuse therefor, is negligence such as will defeat an action for an injury to which such negligence contributes.

9  O C D  41

"The fact that the view of the track was obstructed does not excuse the neglect to look and listen. It makes the neglect to do so even greater."

We think that this is the law.

"Notwithstanding the fact that the train was running at a higher rate of speed than five miles an hour, if Miss Stoltz, by the exercise of ordinary care might have avoided the injury, it would be negligence on her part if she did not avoid it and she could not recover."

Defendant in error complains somewhat of that. We think that is the law.

"If the bell was not rung, and, by the exercise of ordinary care, she could have avoided the injury, and she did not do it, it would be her negligence, and she could not recover."

And thus the court proceeds; and as to the charge relative to the ordinance, and as what she had a right to anticipate respecting that, we feel that it is due to say, that this is a first-class charge in a very troublesome and doubtful sort of a case.

Thus far there is no serious trouble about this case so far as the court is concerned. We have had some difficulty about another proposition, and the real proposition in the case. We think this is a close case. Next, we come to consider the action of the court in overruling the motion of the plaintiff in error for judgment upon the special findings of the jury, notwithstanding the general verdict. It is not necessary for me to refer further to these authorities. They are so familiar to counsel that it is like A, B, C—the 32 O. S., the 24 O. S., 35 O. S., 40 O. S., 41 O. S., the 50 O. S., and many others. In their various bearings, as they relate to the facts of the particular case, we have examined, because of our trouble with this case. This interrogatory was prepounded: "Do you find from the evidence that Miss Stoltz looked or listened for the train between the Straitsville railroad track and the place of the accident? "Answer: "No evidence she did or did not." It is said that the answers to the interrogatories absolutely foreclose the plaintiff; that all the material facts thus found by the jury put them beyond the domain of dispute, so that they admit of no rational inference but that of negligence, and that the question of negligence is one of law only. That must be the position assumed in order to make the claim that is insisted upon here in argument for these answers to these interrogatories. This question was propounded: After she left the Straitsville track and drove towards this crossing where she was killed, did she look and listen? They say there was no evidence whether she did or did not. Negligence is never presumed. If there is no evidence, then the presumption, if any arise, is in favor of the plaintiff, and such presumption must prevail until overcome by proof. That would be our view of that. It is simply a blank. She drove there, but there is no evidence whether she looked or listened. The presumption is not against her; and, if there is no evidence, she has the best of it.

The second interrogatory is: "Do you find from the evidence that Miss Stoltz, as she approached the crossing, had the curtains upon her buggy and the apron in front of her fastened up, and was driving with the lines through an opening in the apron?" Answer: "Yes." This does not prove that she did not look and listen. She was bound to look and listen.. It only shows that the conditions surrounding her were unfavorable. This was properly left open for the jury to determine, under proper instructions by the court.

"Do you find from the evidence that it was raining at the time of the accident? Answer: "Yes."

This is only remotely related to the matter. That is, it does not go to the vitals of the case. It reflects upon the ability of the engineer to manage his train and stop it suddenly, and as to the carrying of sound as far as hearing is concerned. There is no trouble about that.

"Do you find from the evidence that Miss Stoltz stopped her horse or slacked its speed before the horse reached the railroad track?" Answer: "No." This, like question two, does not prove that she failed to perform the duty that the law enjoins, viz: To look and listen, or both. It is one of the circumstances of the case for the determination of the jury.

"Do you find from the evidence that Miss Stoltz was driving her horse in a trot from the time she passed the witness Richardson near the Straitsville track until the horse went upon the track where the accident occurred?" Answer: "Yes." · The same, may be said of this as of the other.

We do not find, as we view it, that these answers furnished any additional reason why the court, · as matter of law, should have disregarded the general verdict and entered judgment upon the special findings of the jury.

Is the verdict sustained by sufficient evidence? When tested by the rules laid down in the charge of the court, and by the principles that must govern a case of this kind, it is, as I have said, not free from doubt. The question is, whether, as a matter of law, Miss Stoltz was guilty of contributory negligence; whether or not that was such a mixed question of law and fact that a rational inference could be drawn in her favor as would require the court, under proper instructions, to send that to the jury. We think that is the whole question in the case. Here was a known railroad crossing. She was coming to cross it. She drove in a trot up until she got upon the track; clear on to the track. She had the curtains of her buggy up. She had the storm apron buttoned up in the usual way with the lines through an aperture, or opening, in the front. There is the · further fact, as found by the jury, that there is no evidence either way that she either looked or listened. To my mind, the conclusion is almost irresistible that she did not perform the duty enjoined upon her by law to look and listen. But, if there is a rational deduction that can be made the other way, then this should be sent to the jury under proper instructions of the court. The evidence warrants the conclusion that this train was running at the rate of twenty-five to thirty miles an hour; that the bell was not rung. That the signal by whistle was given not to exceed sixty or seventy feet from the crossing. The jury found that there is no evidence pro or con that she looked or listened; that she was driving and continued to drive on a trot up to and upon the crossing. That she was in a buggy, with the curtains on, with a storm apron fastened up in the usual way, and with the lines through an opening therein. Taking into consideration the speed of this train, together with other circumstances of this case, there is no difficulty until you have reached the point of time when Miss Stoltz reached the north end of the Lane Brothers' office, forty-five feet from the center of the track. At one hundred and fifty feet away, you could see eleven hundred and fifty feet. At one hundred feet distant, you could see three thousand feet. At forty-five feet, or the north end of Lane Brothers' office, you could see three quar-

ters of a mile, or almost four thousand feet. There is evidence about poles and trees and all that. If this train was running at the rate of twenty-five or thirty miles an hour, the eleven hundred and fifty feet would be covered in perhaps twenty-five seconds. Had she looked at any time before reaching this last point, taking into consideration the speed of the train and the obstructions, she would have discovered nothing. The train was not in sight at eleven hundred and fifty feet, or even three thousand feet, running at that rate. If she listened, could she have heard it? When she comes to pass the corner of Lane Brothers' office, forty-five feet distant, did she look and listen, in view of her situation in the buggy, and the speed at which she was going? It is said she could see three-quarters of a mile, then and thereafter until she reached the track. At this point she was bound to look. Is it true that she did not look? She had the right to assume that the railroad company was complying with the ordinance. That its speed was not to exceed five miles an hour, unless she knew to the contrary, that it was running twenty-five or thirty miles an hour, or at least faster than five miles; and if a person of ordinary care and prudence, so assuming, with a train three-quarters of a mile distant, running at such rate of speed to-wit: five miles per hour, would have crossed, and could have crossed in absolute safety, then it is difficult to say from this whether she did or did not look and listen. It seems to us that inferences may be drawn and rational deductions made for and against her right to recover. My own might be against it. That being true, it is removed from a question of law merely to a mixed question of law and fact, to be determined by the jury under proper instructions from the court.

This opinion of Judge McIlvaine aids this view: (24 O. S., 631, at page 636) "The testimony undoubtedly shows that the deceased were well acquainted with the crossing, and knew its dangerous character; and it also seems clear that they did not, in fact, discover the approach of the train until they had reached, or were within a few feet of the crossing. But to say nothing of the conflict of the testimony, we think the circumstances which surrounded them; the doubt whether they could have heard or seen the approaching train be'ore they did; and as to their exact location at the time it was discovered approaching; their situation, not only in reference to the track and the train, but also as to other conditions which may have required their attention, etc., brought the case so peculiarly within the province of the jury, for the purpose of weighing the circumstances, drawing inferences, and testing their conclusions by the rule of ordinary prudence, that a majority of the court do not feel authorized to interfere with the verdict, especially as the same result has been reached, upon substantially the same state of proof, by four separate and distinct juries."

That is very pertinent to the very matter under discussion here.

Taking this view of the case, we are of the opinion that this judgment should be affirmed.

*Kibler & Kibler*, for plaintiff in error.

*J. A. Flory* and *B. G. Smythe*, for defendant in error,